NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br>v.<br><br>TIMOTHY GIBSON,<br><br>                Defendant. | Crim. No. 20-00441 (GC)<br>Crim. No. 22-00320 (GC)<br><br>**MEMORANDUM ORDER** |

**CASTNER, District Judge**

This matter comes before the Court upon the Government's motions for an order (1) finding a limited waiver of the attorney-client privilege and (2) granting an extension of time to respond to Defendant Timothy Gibson's motion to withdraw his guilty plea.[1] Gibson opposed, and the Government replied.[2]

**I.   BACKGROUND**

In the 20-441 Action, the Government and Gibson entered into a plea agreement dated March 29, 2022,[3] as supplemented by letter dated May 16, 2022,[4] whereby Gibson agreed to plead guilty to Count One of the Indictment, which charges him with conspiracy to commit wire fraud

---

[1]   (Crim. No. 20-441, ECF No. 142; Crim. No. 22-320, ECF No. 51 (Gov't Mots.); Crim. No. 20-441, ECF No. 141; Crim. No. 22-320, ECF No. 50 (Def. Mots.).)

[2]   (Crim. No. 22-320, ECF Nos. 55, 56.)  In clerical error, Gibson filed his opposition papers only in the 22-320 Action, not in the 20-441 Action.

[3]   (Crim. No. 20-441, ECF No. 93.)

[4]   (Crim. No. 20-441, ECF No. 95.)

contrary to 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349. In the 22-320 Action,[5] the Government and Gibson entered into a plea agreement dated May 13, 2022,[6] as supplemented by letter dated May 16, 2022,[7] whereby Gibson agreed to plead guilty to a three-count Information, which charges him with certain violations of 18 U.S.C. §§ 1014 and 1344.

On May 16, 2022, the Court held a hearing where Gibson pled guilty under oath consistent with the plea agreements and was adjudged guilty of the above-referenced offenses.[8] The sentencing on these offenses was set for January 10, 2023, before Chief Judge Freda L. Wolfson,[9] and was later adjourned to April 20, 2023, then to May 24, 2023, and then to June 7, 2023.[10]

In or around March 2023, Gibson retained new counsel.[11] In early April 2023, Gibson's new counsel requested an eight-week adjournment of Gibson's sentencing so that counsel could explore the prospect of moving to withdraw Gibson's guilty plea.[12] The Court adjourned Gibson's

---

[5]    The 22-320 Action was initiated in the District of Utah under Criminal No. 22-115 (DBB) and transferred to the District of New Jersey pursuant to Federal Rule of Criminal Procedure 20. (*See* Consent to Transfer Jurisdiction, *United States v. Gibson*, Crim. No. 22-320 (GC) (D.N.J. May 20, 2022), ECF No. 1.)

[6]    (Crim. No. 22-320, ECF No. 5.)

[7]    (Crim. No. 22-320, ECF No. 6.)

[8]    (Crim. No. 20-441, ECF No. 103; Crim. No. 22-320, ECF No. 12.)

[9]    By Text Order dated January 30, 2023, this matter was reassigned to the undersigned. (Crim. No. 20-441, ECF No. 101; Crim. No. 22-320, ECF No. 10.)

[10]    (*See generally* Crim. No. 20-441 & Crim. No. 22-320, ECF Docket Sheet.)

[11]    (Crim. No. 20-441, ECF Nos. 107, 110; Crim. No. 22-320, ECF Nos. 16, 18.)

[12]    (Crim. No. 20-441, ECF No. 111; Crim. No. 22-320, ECF No. 20.)

sentencing to August 2, 2023, then to November 15, 2023.[13] Gibson's sentencing was adjourned in October 2023 upon Gibson's representation that he intended to withdraw his guilty pleas.[14]

**II.     ARGUMENTS**

Gibson moved to withdraw his guilty plea in both criminal actions, arguing in part that his former counsel, Matthew Adams and Marissa Kingman of Fox Rothschild LLP, rendered ineffective assistance in advising him to plead guilty.[15] Gibson's argument differs slightly in each action.

In the 20-441 Action, Gibson argues that in negotiating and entering into the plea agreement, he, his former counsel, and the Government believed that he could receive a large sentencing enhancement for intended losses regardless of actual losses—a belief that the Court of Appeals later rejected in *United States v. Banks*.[16] Gibson argues that but for that mistaken belief about intended losses, he would not have entered into the plea agreement.[17] Indeed, proof of actual losses was not a concern for Gibson's defense, as Amex's record production lacked information necessary to calculate Amex's actual losses, according to experts hired by Gibson's former counsel who "came up with multiple scenarios from the documents."[18] In short, *Banks* made Gibson's

---

[13]   (Crim. No. 20-441, ECF No. 118; Crim. No. 22-320, ECF No. 28.)

[14]   (Crim. No. 20-441, ECF Nos. 133, 134; Crim. No. 22-320, ECF Nos. 42, 43.)

[15]   (Crim. No. 20-441, ECF No. 141-1 at 30-32, ECF No. 141-6; Crim. No. 22-320, ECF No. 50-1 at 15, 45-48.)

[16]   55 F.4th 246 (3d Cir. 2022).  (Crim. No. 20-441, ECF No. 141-1 at 12-13.)

[17]   (Crim. No. 20-441, ECF No. 141-1 at 16, 24.)

[18]   (*Id.* at 28, 30.)

3

former counsel's advice "incompetent" or at least "woefully deficient, based on what he did know about the case, and in particular the lack of evidence as to loss."[19]

Gibson also argues that counsel was ineffective regardless of the Court's application of *Banks*. Gibson argues that although a jury could convict him based on intended losses, "Adams failed to consider or discuss with [Gibson]" that (i) the lacking evidence would make it hard for the Government to prove actual losses, and (ii) proving intended losses would also be hard because the Government would need to prove that "Gibson was so sophisticated as to have anticipated a loss in a situation filled with accounting tricks and concealed corporate policies."[20] In Gibson's view, "[a] competent attorney under those circumstances would not have counseled his client - - even pressured his client - - to accept the plea that was offered."[21]

In the 22-320 Action, Gibson attacks the following acts of his former counsel, which he says were "unreasonable under professional prevailing norms":

- "misadvis[ing] Gibson that if he affirmatively answered this Court's questions during the plea colloquy as Adams instructed, no more charges would be forthcoming," contrary to the AUSA NJ's disclaimer;

- claiming that "the Cooperation would aid Gibson in receiving only fugitive probation but . . . not account[ing] for Lev not being extradited";

- "instruct[ing] Gibson to claim his plea was freely and voluntarily made";

- telling Gibson that "he had to plead notwithstanding his innocence";

- "constantly misl[eading] [Gibson], misrepresenting facts and law";

- "highly overstat[ing]" the Cooperation, "the main impetus of Gibson changing his plea";

---

[19]   (*Id.* at 30.)

[20]   (*Id.* at 31.)

[21]   (*Id.*)

4

- "advis[ing] Gibson to enter an internally inconsistent agreement providing no assumption of risk if the Government did not extradite Lev, knowing Lev absconded";

- "fail[ing] to correct the failings of the plea colloquy, causing ambiguity and causing Gibson to reconcile the differences himself";

- erroneously claiming that "the AUSA Utah had threatened additional charges, providing no proof of such, and with Gibson's factual and legal innocence applicable to further charges";

- "misadvise[ing] Gibson that the empty promises the AUSA NJ could be made";

- "allow[ing] the Stipulated Facts to indicate that [Mountain America Credit Union (MACU)] granted him loans, when this is false"; and

- "advis[ing] Gibson to plead to provisions resulting in the opposite of what he told Gibson it would do."[22]

In response, the Government moved for an order permitting it to speak with Gibson's former counsel before it responds to Gibson's motion.[23] The Government argues that by raising claims of ineffective assistance of counsel, or "IAC," and putting his communications with his former counsel at issue, Gibson has implicitly waived the attorney-client privilege and work-product protection pertaining to his claims.[24]

In support, the Government first cites *United States v. Tutis*, where the court found—as all parties there agreed, unlike in our case—that because the defendant attempting to withdraw his guilty plea before sentencing claimed reliance on advice of counsel, he waived the attorney-client

---

[22]    (Crim. No. 22-320, ECF No. 50-1 at 46-47.)  Gibson submits a certification in support of these assertions.  (*See* Crim. No. 22-320, ECF No. 50-2 ¶¶ 6-10, 14-18, 21-25.)  Gibson also certifies that he read his motion and that its "contents . . . are true and correct based upon [his] information, knowledge, and belief."  (*Id.* ¶ 1.)

[23]    (Crim. No. 20-441, ECF No. 142; Crim. No. 22-320, ECF No. 51.)

[24]    (Crim. No. 20-441, ECF No. 142-1 at 2.)

5

privilege and work-product protection for plea negotiations and discussions.[25] The court thus ruled that (i) at an upcoming hearing, the former defense counsel could be examined about their "understanding of the plea agreement" and "communications with [their] client[s]"; (ii) former defense counsel "may be required to disclose their work product"; (iii) before the hearing, the Government could interview former defense counsel, and current defense counsel could attend the interviews; and (iv) the defendant had to produce pertinent communications and records—all limited to the "scope of waiver."[26] The court defined the "scope of waiver" as follows:

> All documents and communications with clients or other counsel during the period October 17, 2016 through November 1, 2016, relating to the negotiation, understanding, and acceptance of Mr. Tutis' November 1, 2016 plea agreement, with respect to whether the plea agreement of [the defendant] was or was not packaged with the plea agreement of [the co-defendant].[27]

Next, as in *Tutis*, the Government here likens Gibson's motion to a § 2255 motion based on ineffective assistance of counsel.[28] For such § 2255 motions, courts routinely rule that the movant impliedly waives the attorney-client privilege.[29]

---

[25] Crim. No. 14-699-1, 2019 WL 1894792 (D.N.J. Apr. 26, 2019), ECF No. 580, *aff'd*, 845 F. App'x 122 (3d Cir. 2021). (Crim. No. 20-441, ECF No. 142-1 at 2.)

[26] *Tutis*, Crim. No. 14-699-1 (D.N.J. Apr. 28, 2017), ECF No. 457 ¶¶ 5-10.

[27] *Id.* ¶ 11.

[28] *Tutis*, Crim. No. 14-699-1 (D.N.J. Apr. 24, 2017), ECF No. 453 at 2. (ECF No. 142-1 at 3 n.2.)

[29] (*See* ECF No. 142-1 at 3 n.2 (collecting cases).) *See also United States v. Avasso*, Crim. No. 08-482, 2010 WL 4226516, at *8 n.4 (D.N.J. Oct. 21, 2010) ("The Court [previously] found that Defendant waived the attorney-client privilege with regard to each claim of ineffective assistance of counsel as to all matters pertaining to discussions with the attorneys whose advice and conduct he alleges to be ineffective." (citation omitted)); *United States v. Garba*, 285 F. Supp. 2d 504, 506, 510 n.3 (D.N.J. 2003), *aff'd*, 128 F. App'x 855 (3d Cir. 2005) (noting for a defendant's motion to withdraw his guilty plea before sentencing that "Garba waived the attorney-client privilege when he asserted that his plea was the result of ineffective assistance of counsel"); *United*

6

Finally, the Government argues that under New Jersey's Rules of Professional Conduct, "a lawyer may reveal information reasonably necessary to respond to allegations concerning the lawyer's representation of the client":

> (d) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:
> . . .
> (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer based upon the conduct in which the client was involved; or
> . . .
> (4) to comply with other law.[30]

In opposition, Gibson cites *Price v. United States*, where the court largely denied a motion to reconsider its order granting the Government's request for an order requiring a former defense counsel to provide an attorney affidavit and supporting documentation in response to the defendant's claims of ineffective assistance of counsel in his § 2255 motion.[31] In *Price*, the parties agreed that the defendant's IAC allegations effectuated a limited waiver of the attorney-client privilege, but they disputed whether the IAC claims could be resolved using the existing record

---

*States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009) ("Davis waived the attorney-client privilege when Davis asserted he should be able to withdraw his guilty plea based on the erroneous advice of his appointed counsel." (citation omitted)); *Mendivelso v. United States*, 507 F. Supp. 2d 331, 339 n.3 (S.D.N.Y. 2007) ("The attorney-client privilege is implicitly waived when the defendant asserts a claim of ineffective assistance of counsel." (citation omitted)).

[30]   N.J. R.P.C. 1.6(d). (ECF No. 142-1 at 3.) *See also State v. Powell*, No. A-4519-09T4, 2011 WL 2899078, at *5 (N.J. Super. Ct. App. Div. July 21, 2011) (finding that for a hearing on a defendant's claim of ineffective assistance of counsel, the former defense counsel's "testimony was necessary and certainly permissible under the Rules of Professional Conduct, which permit a lawyer to reveal confidential information to the extent necessary to defend against a claim such as alleged by defendant" (citing RPC 1.6(d)(2))).

[31]   Crim. No. 21-32, 2023 WL 8370107, at *1-2 (D. Del. Dec. 4, 2023). (Crim. No. 22-320, ECF No. 55 at 2-7.)

without an affidavit by the former defense counsel.[32]  For three of the four IAC claims, the court ruled that the existing record did not provide enough information for the Government or the court to evaluate the defendant's IAC allegations, and that there was no good cause to reconsider its decision.[33]  In so ruling, the court found that the Rules Governing Section 2255 Proceedings empower the court to require former counsel to provide an affidavit response; that the court's decision aligns with ABA Formal Opinion 10-456,[34] in that the court-ordered affidavit "limit[s] unnecessary exposure of formerly privileged information" in "a court-supervised setting"; that requiring formal defense counsel to file an affidavit did not "amount[] to assisting or collaborating with the Government"; and that "an evidentiary hearing alone – absent any pre-hearing discovery or exchange of documents – [would be] insufficient to properly develop the record and [would] unfairly prejudice[ ] the [G]overnment's ability to respond to [the defendant]'s claims."[35]

Comparing *Price* with this case, Gibson argues that the Government here did not propose a process for disclosing privileged information that allays the concerns discussed in *Price*.  Instead of permitting the Government to conduct a prehearing interview of former counsel, Gibson asserts, the Court should at most order former counsel to provide affidavits responding to Gibson's claims.[36]  Gibson also argues that the existing record provides enough information for the Government to address his IAC claims, many of which "pertain to errors charged first to the

---

[32]    2023 WL 8370107, at *2.

[33]    *Id.* at *3-4.

[34]    The court noted that "[a]n ABA ethics opinion is not binding on [the court] unless adopted," and the District of Delaware had not adopted that opinion.  *Id.* at *5 n.4.

[35]    *Id.* at *4-5 (alterations in original).

[36]    (Crim. No. 22-320, ECF No. 55 at 7.)

8

Government as drafter of the agreements herein—inconsistencies in the Plea Agreement and Cooperation, errors in the plea colloquy, failure to provide evidence of actual loss in the AmEx case, failure to extradite Lev, and even charging Gibson with matters that do not constitute crimes."[37] Gibson continues that "[t]he claims against Adams and/or Kingman merely argue that they should have recognized the Government's errors on" the above-bulleted points and acted before advising Gibson to plead guilty.[38] Finally, Gibson argues that if the Court orders former counsel to disclose privileged information, the Court should limit the information to what is "necessary for the resolution of the claims at hand."[39]

### III.  FINDINGS & CONCLUSIONS

Having carefully considered the parties' submissions, the Court finds the following.

1. Defendant Gibson, in moving to withdraw his guilty pleas, alleges various ways in which the advice and conduct of his former counsel, Matthew Adams and Marissa Kingman, caused him to receive ineffective assistance of counsel during the negotiation of and entry into the plea agreements. Gibson places at issue his former counsel's alleged (i) mistaken understanding of permissible sentencing enhancements for intended losses; (ii) advice, claims, instructions, and representations that influenced Gibson's decision to plead guilty; and (iii) conduct in connection with the terms of the plea agreements and related colloquy.

2. By asserting his reliance on the advice of counsel for the plea discussions, negotiations, and agreements, Gibson impliedly waived his attorney-client privilege and work-product protection for all (i) communications between Gibson and his former counsel and (ii) his

---

[37] (*Id.* at 7-8.)

[38] (*Id.* at 8.)

[39] (*Id.* at 13 (citation omitted).)

9

former counsel's work product, both categories being limited to the scope of Gibson's waiver, which relates to the negotiation, understanding, and acceptance of Gibson's plea agreements in the 20-441 and 22-320 Actions.

3. The existing record does not provide enough information for the Court to evaluate Gibson's claims or allegations of ineffective assistance of counsel.

4. Good cause therefore exists to permit Gibson's former counsel to disclose privileged communications with Gibson, within the scope of Gibson's waiver, so that the Government, former counsel, or both may respond to the claims of ineffective assistance of counsel raised in Gibson's motions and supporting certification. To that end, former counsel shall prepare and serve all parties with an affidavit, including any supporting documents, responding to Gibson's claims within 45 days after the entry of this Memorandum Order.

5. The Government shall file its response to Gibson's motions (Crim. No. 20-441, ECF No. 141; Crim. No. 22-320, ECF No. 50) within 45 days after it receives former counsel's affidavit(s).

6. The Government shall send former counsel a copy of this Memorandum Order within seven days after its entry.

7. The Clerk's Office is directed to **TERMINATE** the Government's motions (Crim. No. 20-441, ECF No. 142; Crim. No. 22-320, ECF No. 51).

IT IS on this 16th day of April 2024 **SO ORDERED**.

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**